UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STERLING STEVENS,

                              Plaintiff,

          v.                                                           9:21-CV-0306
                                                                             (GLS/ML)

ANDREW CUOMO et al.,

                              Defendants.
_____

APPEARANCES:

STERLING STEVENS
16-A-2565
Plaintiff, pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Sterling Stevens commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application").[1] By Decision and Order entered on April 29, 2021, plaintiff's IFP Application was granted, but

---

[1] Plaintiff filed an initial IFP application with his complaint, which was not properly completed in accordance with 28 U.S.C. § 1915, Dkt. No. 2, or accompanied by a completed inmate authorization form. By Order entered on March 19, 2021, this action was administratively closed based on plaintiff's failure to comply with the filing fee requirement. Dkt. No. 3 ("March 2021 Order"). Thereafter, plaintiff filed the IFP Application and a completed inmate authorization form, and the Clerk was directed to reopen this action and restore it to the Court's active docket. Dkt. Nos. 4, 5, 6.

following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court found that it was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 7 ("April 2021 Order"). In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint. *Id*. at 23-24.

Presently before the Court is plaintiff's amended complaint and motion for class certification and appointment of counsel. Dkt. No. 9 ("Am. Compl."); Dkt. No. 10 ("Motion for Class Certification and Counsel").

## II.     SUFFICIENCY OF THE AMENDED COMPLAINT

### A.     The Complaint and April 2021 Order

In his original complaint, plaintiff asserted claims against various state officials, and the telephone services provider for the New York State Department of Corrections and Community Supervision (DOCCS), identified as JPay Services, based on allegations that inadequate measures were taken at Clinton Correctional Facility between March, 2020 and January, 2021, to prevent the spread of the coronavirus (hereinafter "COVID-19") and ensure a healthy living environment for infected inmates. *See generally* Compl.

The complaint was construed to assert the following claims against the named defendants in their individual and official capacities: (1) Eighth Amendment conditions-of-confinement claims against New York Governor Andrew Cuomo and DOCCS Commissioner Anthony J. Annucci based on plaintiff's living conditions in general population between March, 2020 and January, 2021; (2) Fourteenth Amendment due process claims against Cuomo and Annucci based on plaintiff's living conditions in general population between March, 2020 and January, 2021; (3) an Eighth Amendment conditions-of-confinement claim against JPay Services based on the company's failure to expand the "Wi-Fi system" at

Clinton Correctional Facility to include general population inmates; (4) Fourteenth Amendment due process and equal protection claims against JPay Services based on the company's failure to expand the "Wi-Fi system" at Clinton Correctional Facility to include general population inmates; (5) Eighth Amendment conditions-of-confinement claims against Clinton Correctional Facility Superintendent Earl Bell and Deputy Superintendent of Health Services T. Harrigan based on plaintiff's living conditions during his confinement in the facility hospital; and (6) Fourteenth Amendment due process claims against Bell and Harrigan based on plaintiff's living conditions during his confinement in the facility hospital. *See* April 2021 Order at 8-9.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's official capacity claims were dismissed with prejudice, and his remaining Section 1983 claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* April 2021 Order at 11-23.[2]

### B.    Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the April 2021 Order and it will not be restated in this Decision and Order. *See* April 2021 Order at 2-4.

---

[2] The complaint requested monetary damages and declaratory relief, as well as class certification and appointment of counsel. Compl., ¶¶ 64-68. Insofar as plaintiff sought class certification, his request was denied because it was not made through a proper motion, and did not satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* April 2021 Order at 10-11. As a result, the Court considered the action as one brought by plaintiff only in his individual capacity. *Id*. at 11.

As with the original complaint, plaintiff's amended complaint alleges wrongdoing associated with the living conditions at Clinton Correctional Facility. *See generally* Am. Compl. The allegations in the amended complaint are materially similar to the allegations in the original complaint, with a few limited exceptions.

First, the amended complaint now names Securus Technologies, Inc. as a defendant in place of JPay Services. *Compare* Compl., *with* Am. Compl.

Second, the amended complaint names the following new individuals as defendants: (1) Carl J. Koenigsmann, Commissioner of Health for DOCCS; (2) Daniel Martuscello, III, Commissioner of Administration for DOCCS; and (3) Robert E. Pickens, President of Securus. Am. Compl. at 1-3.

Third, the amended complaint includes new allegations regarding (1) the involvement by Albany officials in the management and operation of Clinton Correctional Facility following the prison escape that occurred in 2015, (2) the contractual arrangement between Securus and DOCCS, and contemplated scope services, (3) the setup and day-to-day management of Clinton Correctional Facility between March, 2020 and January, 2021, including the scenarios in which inmates were not socially distanced from other people during this time, (4) plaintiff's inability to receive the vaccine when it was first available, and (5) the conditions in the Isolation Unit of the facility hospital while plaintiff was confined there. *See generally* Am. Compl.

Liberally construed, the amended complaint asserts the following claims: (1) Eighth Amendment conditions-of-confinement claims against Pickens and Securus based on plaintiff's lack of access to the secure Wi-Fi network between March, 2020 and January, 2021; (2) Fourteenth Amendment due process claims against Pickens and Securus based on

plaintiff's lack of access to the secure Wi-Fi network between March, 2020 and January, 2021; (3) Fourteenth Amendment equal protection claims against Cuomo, Annucci, Martuscello, Pickens, and Securus based on treating general population inmates at Clinton Correctional Facility differently than inmates at that facility who were confined in the special housing unit (SHU) with respect to access to tablet devices; (4) Eighth Amendment conditions-of-confinement claims against Cuomo and Annucci based on their failure to take adequate steps to control the spread of COVID-19; (5) Fourteenth Amendment due process claims against Cuomo and Annucci based on their failure to take adequate steps to control the spread of COVID-19; (6) Fourteenth Amendment equal protection and due process claims against Cuomo, Annucci, and Koenigsmann based on failing to include plaintiff and other inmates in the Phase I rollout of the COVID-19 vaccine; (7) Eighth Amendment conditions-of-confinement claims against Bell and Harrigan based on plaintiff's living conditions during his confinement in the facility hospital; and (8) Fourteenth Amendment due process claims against Bell and Harrigan based on plaintiff's living conditions during his confinement in the facility hospital.

The amended complaint seeks monetary damages and injunctive and declaratory relief. Am. Compl. ¶¶ 94-98. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C. Analysis

#### 1. Claims Against Securus and Pickens

As noted in the April 2021 Order, Section 1983 requires "that the alleged deprivation [be] committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

5

Securus is not a state agency, but rather a private corporation that allegedly contracts with DOCCS to provide telephone and other telecommunications services to correctional facilities. Am. Compl. ¶ 9. Pickens, as the President of Securus, is not a state employee. Plaintiff nonetheless asserts Section 1983 claims against Securus and Pickens based on the company's failure to expand the W-Fi network after March, 2020, because the contractual arrangement between Securus and DOCCS, executed on June 17, 2017, required that Securus provide "thousands of tablets" to allow inmates to place telephone calls while in their cell, and Securus installed a secured Wi-Fi system for in cell communications prior to the pandemic, and had the authority to "activate[ ] the Wi-Fi features on the tablets that they distributed to . . . general population [inmates]" during the pandemic. *See* Am. Compl. ¶¶ 9-10, 23.

As an initial matter, the amended complaint is devoid of any allegations which plausibly suggest that as a result of the aforementioned contractual arrangement, Securus (1) was controlled by DOCCS, (2) worked jointly with one or more DOCCS officials to improperly maintain the telephone and Wi-Fi services at Clinton Correctional Facility, (3) "exercised powers that are traditionally the exclusive prerogative of the State[,]" or (4) became "entwined with governmental policies" or allowed DOCCS to become "entwined in its management or control." *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (identifying the latter two as tests to determine whether the acts of a private entity are fairly attributable to the state); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001) ("[A] challenged activity may be state action when it results from the State's exercise of coercive power, . . . when the State provides significant encouragement, either overt or covert, . . . or when a private actor operates as a willful

6

participant in joint activity with the State or its agents[.] . . . We have treated a nominally private entity as a state actor when it is controlled by an agency of the State, . . . when it has been delegated a public function by the State, . . . when it is entwined with governmental policies, or when government is entwined in [its] management or control[.]" (internal quotation marks and citations omitted)).  Furthermore, there can be no doubt that providing individuals with access to telephone and "Wi-Fi" services are not functions that have been traditionally performed by governments.  The fact that Securus was the exclusive provider of these services, and allegedly had some discretion regarding the implementation of these services, does not transform the private contract with DOCCS into a state actor agreement.  *See Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.").  Thus, as with the original complaint, the amended complaint fails to allege sufficient facts from which the Court may plausibly infer that Securus was a state actor at the time of the events giving rise to plaintiff's claims.  *See Montgomery v. Securus Techs*., No. 19-CV-0433, 2020 WL 3343000, at *4 (W.D. Ky. June 18, 2020) (collecting cases holding that "companies providing telephone services to inmates are not 'state actors' within the meaning of Section 1983[,]" and noting that the only time an exception has been found is when the allegations related to the monitoring of telephone calls); *Smith v. N.Y. City Dep't of Corr*., No. 18-CV-7018, 2019 WL 2473524, at *3 (S.D.N.Y. June 13, 2019) ("Courts have repeatedly found that contracting with a prison to provide telephone services does not on its own make a private company a state actor."), *report and recommendation adopted by* 2019 WL 2866729 (S.D.N.Y. July 3, 2019); *Belton v.*

*SecurusTech.net*, No. 13-CV-4850, 2014 WL 524470, at *6 (E.D.N.Y. Feb. 7, 2014) ("Since SecurusTech.net is not a state actor, a Section 1983 claim cannot be stated against it as a matter of law."); *Whitaker v. Director*, No. 11-CV-0068, 2013 WL 2318889, at *13, *15 (E.D. Tex. May 27, 2013) ("[N]either Securus nor its employees are amenable to suit under 42 U.S.C. § 1983" because Securus is not a state actor.).

Furthermore, even if the Court were to assume, for purposes of this Decision and Order, that Securus was a state actor during the events giving rise to plaintiff's claims, the Court has no basis to plausibly infer from the allegations in the amended complaint that this entity (or its President) had the authority, during the COVID-19 pandemic, to direct its employees to enter Clinton Correctional Facility and expand spacing between outdoor telephones, or grant inmates expanded access to the Wi-Fi network within the facility. Thus, plaintiff has also failed to allege any facts which plausibly suggest that Securus, or its President, were personally involved in the alleged wrongdoing.

Accordingly, plaintiff's Section 1983 claims against Securus and Pickens are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Official Capacity Claims Against State Actors

Insofar as plaintiff asserts Section 1983 claims for monetary relief against any of the named defendants in their official capacities, those claims are dismissed with prejudice for the reasons set forth in the April 2021 Order. *See* April 2021 Order at 13-14.

### 3. Eighth Amendment Claims

The legal standard governing an Eighth Amendment conditions-of-confinement claim

was discussed at length in the April 2021 Order, and will not be restated herein. *See* April 2021 Order at 14-15.

### (a) Cuomo and Annucci

Liberally construed, the amended complaint re-asserts Eighth Amendment claims against defendants Cuomo and Annucci based on the conditions of confinement at Clinton Correctional Facility in and after March, 2020, which plaintiff alleges were inadequate to control the spread of COVID-19.

As with the original complaint, the allegations in the amended complaint make clear that there were no COVID-19 infections at Clinton Correctional Facility until after visitation was re-opened in August 2020, because the facility existed in a "double bubble." *See* Am. Compl. ¶¶ 33-35. Thus, regardless of whether plaintiff would have preferred the existence of further protective measures prior to the period between March, 2020 and the date visitation was re-opened, the Court has no basis to plausibly infer that the facility environment during this time presented an objectively serious risk of harm to plaintiff. Similarly, in light of the absence of any COVID-19 infections during this time, the Court has no basis to plausibly infer that any of the named defendants acted with deliberate indifference to the needs of any inmate, including plaintiff, during this time.

With respect to plaintiff's Eighth Amendment claim based on the re-opening of visitation and management of facility operations thereafter, as with the original complaint, the amended complaint does not allege that safety measures were altogether eliminated and/or not followed once visitation was re-opened. In addition, although the amended complaint alleges that over 200 inmates tested positive for COVID-19 by the time visitation was shut down again on December 16, 2020, it is unclear what the number of infections were in the

9

weeks leading up to this date such that the Court is unable to evaluate whether there was a drastic spike in an extremely short period of time, or instead a steady increase in the number of infected inmates. Furthermore, by plaintiff's own allegations, during the time that visitation was re-opened, various cell block areas were "shut down" when inmates in those areas contracted COVID-19, contract tracing was performed in an effort to limit the spread of the virus, and the non-incarcerated population of Clinton County "reported similar spikes in their positive cases[.]" *See* Am. Compl. ¶¶ 39-42. Thus, the Court is hesitant to conclude that the allegations in the amended complaint are sufficient to plausibly suggest that the overall environment at Clinton Correctional Facility after visitation was re-opened presented a substantial risk of serious harm to plaintiff. *See, e.g.*, *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (noting that whether prison conditions pose a substantial risk of serious harm from COVID-19, or any other risk, must be determined "after accounting for the protective measures [the prison system] has taken"); *Harper v. Cuomo*, No. 9:21-CV-0019 (LEK/ML), 2021 WL 1821362, at *8 (N.D.N.Y. Mar. 1, 2021) ("[G]iven that COVID-19 can lead to adverse health consequences quickly, and that Adirondack has seen no deaths or hospitalization so far, it is hard to conclude that inmates are at an elevated risk of contracting COVID-19 inside Adirondack relative to the risk they would face in the surrounding community. That raises serious questions about whether Plaintiffs can satisfy the objective prong of the Eighth Amendment test. It is hard to say that prisoners are exposed to a risk that 'is not one that today's society chooses to tolerate,' or a risk 'so grave that it violates contemporary standards of decency,' . . . if the risk inside the facility is no greater than—and perhaps less than—the risk outside of it." (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)), *report and recommendation adopted by* 2021 WL 1540483 (N.D.N.Y. Apr. 20, 2021).

However, even assuming that the allegations in the amended complaint are sufficient for the Court to draw this inference, the Court has no basis to plausibly infer from the facts alleged that any decisions regarding re-opening visitation, inmate privileges, and day-to-day management of Clinton Correctional Facility were made out of deliberate indifference to the well-being of plaintiff or any other inmate.  Rather, at most, plaintiff's allegations regarding the failure of state officials to expand inmate access to "Wi-Fi" services in lieu of re-opening visitation, or impose greater restrictions on the visitation experience and/or inmate encounters suggests negligent behavior.  Indeed, the extensive number of safety measures put in place throughout the pandemic, as alleged by plaintiff and evidenced by the documents attached to his pleading, belie any suggestion that defendants Annucci and Cuomo (or any other named defendant) "turned the kind of blind eye and deaf ear to a known problem that would indicate" deliberate indifference.  *Money v. Pritzker*, 453 F. Supp. 3d 1103, 1132 (N.D. Ill. Apr. 10, 2020); *see Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (noting that a failure to properly "alleviate a significant risk that [DOCCS officials] should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of [unconstitutional] punishment").

Accordingly, plaintiff's Eighth Amendment claims against Annucci and Cuomo are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (b)  Bell and Harrigan

Plaintiff alleges that he was confined in a four-person dorm for ten days after his symptoms from COVID-19 dissipated, which was never properly cleaned or sanitized, and was too small to enable him to exercise.  Am. Compl. ¶¶ 58-60.  Plaintiff also alleges that he

was unable to access the recreation area of the facility hospital to send mail, use the telephones, or exercise during this ten-day period, and lost thirty-six pounds as a result of his inability to consume mess hall meals, which he had not eaten in several years. *Id*. ¶¶ 60-61. According to plaintiff, he was also denied a package containing food items during this time, and medical staff refused to take his temperature. *Id*. ¶¶ 62-63.

Plaintiff contends that defendants Bell and Harrigan, as supervisory officials, were responsible for his conditions of confinement in the facility hospital after he contracted COVID-19, and specifically alleges that these officials created "policies" at the facility that prevented him from being able to obtain the food package sent to him and "use the hospital isolation day room where the phones were [located.]" Am. Compl. ¶¶ 70, 92.

As an initial matter, plaintiff's alleged loss of weight did not occur as a result of a denial of food, but rather as a result of his decision not to consume the food provided to him. In addition, the amended complaint lacks allegations which plausibly suggest that (1) the mess hall meals were nutritionally inadequate, or (2) plaintiff's weight loss resulted in him suffering from serious and urgent medical needs that were ignored. Thus, plaintiff has failed to allege sufficient facts to satisfy the objective element of his Eighth Amendment claim insofar as it is based on missed meals and corresponding weight loss. *See, e.g.*, *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) ("[I]f weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." (citations omitted)); *Green v. Phillips*, No. 04-CV-10202, 2006 WL 846272, at *5 (S.D.N.Y. Mar. 31, 2006) (dismissing Eighth Amendment claim because the plaintiff chose to go on the hunger strike and the symptoms did not rise to the level of a "sufficiently serious" condition, i.e., "a condition of urgency, one

12

that may produce death, degeneration, or extreme pain" and were to be expected by someone who does not eat).

Moreover, the amended complaint lacks any allegations which plausibly suggest that either defendant Harrigan or defendant Bell were aware that plaintiff had difficulty consuming mess hall meals, and nonetheless took steps to prevent plaintiff from obtaining a package containing shipped foods. Thus, plaintiff has also failed to allege sufficient facts to satisfy the subjective element of his Eighth Amendment claim insofar as it is based on missed meals and corresponding weight loss.

Insofar as plaintiff alleges that he was unable to exercise for ten days, the amended complaint lacks any allegations which plausibly suggest that before contracting COVID-19, plaintiff regularly exercised, and/or that after his symptoms improved, he felt capable of physical exercise -- despite his weight loss -- such that the Court may infer that this relatively brief confinement in the four-person dorm denied him of his basic human need to exercise. *See McCray v. Lee*, 963 F.3d 110, 117-18 (2d Cir. 2020) (noting that "deprivations of physical exercise for short periods will not rise to constitutional dimension"); *Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001) ("[N]ot every deprivation of exercise amounts to a constitutional violation. Rather, a plaintiff must show that he was denied all meaningful exercise for a substantial period of time."); *Davidson v. Coughlin*, 968 F. Supp. 121, 131 (S.D.N.Y. 1997) (finding that the denial of "all outdoor exercise" for "fourteen days in a row" does not "implicate Eighth Amendment concerns"). In any event, the amended complaint fails to allege facts which plausibly suggest that plaintiff was denied access to the recreation area of the hospital out of deliberate indifference to his ability to exercise. Rather, the allegations in the amended complaint plausibly suggest that inmates were not given

access to the recreation area of the hospital when COVID-19 was "spread[ing] like wild fire" through the facility, Am. Compl. ¶ 40, in an effort to limit the spread of the virus. Thus, plaintiff has failed to allege sufficient facts to satisfy the subjective element of his Eighth Amendment claim insofar as it is based on a denial of exercise opportunities.

Lastly, insofar as plaintiff alleges that he was unable to use the telephone or mail services to communicate with his family, and was confined in an unclean dorm area, there can be no doubt that social interaction and sanitation are basic human needs. However, in this case, the alleged deprivations were relatively brief.

Furthermore, the allegations in the amended complaint plausibly suggest that inmates were not given access to the recreation area of the hospital, and inmate porters were prohibited from entering isolation rooms, in an effort to limit the spread of COVID-19. In addition, while it appears that plaintiff did not receive adequate cleaning supplies while in the four-person dorm as a result of a shortage of these supplies, *see* Am. Compl. ¶¶ 62, 92, insofar as these supplies may have been available, the amended complaint is devoid of any allegations which plausibly suggest that either defendant Harrigan or defendant Bell were aware that they were not provided to plaintiff. Thus, plaintiff has failed to allege sufficient facts to satisfy the subjective element of his Eighth Amendment claim against defendants Harrigan and Bell insofar as it is based on a temporary denial of access to the telephone or mail, and an unclean living environment.

Accordingly, plaintiff's Eighth Amendment claims against defendants Bell and Harrigan are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Fourteenth Amendment Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). However, "[t]he Fourteenth Amendment guarantees 'more than fair process'; it 'cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them.'" *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (internal quotation marks and citations omitted)). "Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To be actionable, "[t]he interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* at 152 (internal quotation marks and citation omitted).

### (a) Substantive Due Process

As noted in the April 2021 Order, "[b]ecause of a general reluctance 'to expand the concept of substantive due process,' '[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *See* April 2021 Order at 19 (quoting *County of Sacramento*, 523 U.S. at 842 (internal citations and quotation marks omitted)).

15

In this case, the Eighth Amendment protects inmates against unconstitutional conditions of confinement. Thus, as noted in the April 2021 Order, insofar as plaintiff has attempted to assert Fourteenth Amendment substantive due process claims against various officials based on the conditions of his confinement at Clinton Correctional Facility in and after March, 2020, those claims are subsumed by plaintiff's related Eighth Amendment claims, and are therefore dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See* April 2021 Order at 19-20 (collecting cases). The amended complaint is also devoid of any allegations which plausibly suggest that any named defendant made decisions regarding day-to-day management and operations at Clinton Correctional Facility in and after March 2020 that was so outrageously arbitrary as to constitute a gross abuse of governmental authority.

Insofar as the amended complaint may be construed to assert a substantive due process claim based on failing to include plaintiff (and other inmates) in the Phase I rollout of the COVID-19 vaccine, plaintiff does not have a liberty interest in obtaining a vaccine. Moreover, the amended complaint is devoid of any allegations which plausibly suggest that the eligibility list for the Phase I rollout of the COVID-19 vaccine was decided in a manner that was so outrageously arbitrary as to constitute a gross abuse of governmental authority.

Accordingly, plaintiff's Fourteenth Amendment substantive due process claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (b) Procedural Due Process

Insofar as plaintiff may have intended to re-assert procedural due process claims based on the conditions of his confinement leading up to his placement in the facility

hospital, and the conditions of his confinement in the facility hospital, such claim are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for the reasons set forth in the April 2021 Order. *See* April 2021 Order at 20-23; *see also Arce v. Walker*, 139 F.3d 329, 335 (2d Cir. 1998) (holding that the conditions of an inmate's eighteen-day administrative segregation did not invoke a liberty interest where the inmate argued that the atypical conditions he faced included denial of exercise and access to communal meals and communal religious services).

### 5. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Liberally construed, the amended complaint alleges that plaintiff and other similarly

17

situated inmates were treated differently than non-incarcerated people who were included in the Phase I rollout of the COVID-19 vaccine. The amended complaint also alleges that plaintiff and other similarly situated inmates were treated differently than inmates at Clinton Correctional Facility who were confined in the SHU and allowed expanded access to tablet devices and the "Wi-Fi" network.

### (a) COVID-19 Vaccine

Insofar as plaintiff has attempted to assert an equal protection claim based on not being included in the Phase I rollout of the COVID-19 vaccine, he is not similarly situated to non-incarcerated people, and is not a member of a suspect or quasi-suspect class as a result of his incarceration status. *See Myers v. County of Orange*, 157 F.3d 66, 75 (2d Cir. 1998) (identifying suspect or quasi-suspect classes to include "race, religion, gender, alienage, [and] national origin"); *Thompson v. Carlsen*, No. 08-CV-0965, 2010 WL 3584409, at *12 (N.D.N.Y. Aug. 16, 2010) ("'[F]elons do not constitute a suspect class' for the purposes of the Equal Protection Clause." (quoting *Dallara v. Sinnott*, No. 98-CV-3472, 2006 WL 1582159, at *2 (E.D.N.Y. June 5, 2006)), *report and recommendation adopted by* 2010 WL 3584396 (N.D.N.Y. Sept. 7, 2010). Moreover, the amended complaint lacks any allegations which plausibly suggest that one or more of the named defendants had a discriminatory motive in excluding plaintiff from the Phase I eligibility list for the COVID-19 vaccine. In addition, there is unquestionably a rational basis for contemplating logistics, public health, and scope of risk when determining the aforementioned eligibility list.

For all of these reasons, plaintiff's equal protection claim based on government officials not including him (and other similarly situated incarcerated people) in the Phase I eligibility list for the COVID-19 vaccine is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)

18

and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### (b) Expanded Access to Tablets and "Wi-Fi" Network

Insofar as plaintiff has attempted to assert an equal protection claim based on not being given the same access to his in-cell tablet and the "Wi-Fi" network as inmates housed in the SHU, general population inmates are not similarly situated to SHU inmates. In addition, the amended complaint is devoid of any allegations which plausibly suggest that either (1) the difference in treatment between inmates housed in the general population and inmates housed in the SHU was motivated by a desire to discriminate against a non-homogeneous group of inmates in general population, or (2) prison administrators did not have a rational basis for treating inmates housed in the general population -- who do not face restrictions regarding access to the prison yard telephones or visitations -- differently than inmates housed in the SHU.

For all of these reasons, plaintiff's equal protection claim based on not being given the same access to his in-cell tablet and the "Wi-Fi" network as inmates housed in the SHU is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### III.  MOTION FOR CLASS CERTIFICATION AND COUNSEL

In light of the Court's dismissal of each of the Section 1983 claims articulated in the amended complaint, plaintiff's Motion for Class Certification and Counsel is denied as moot.

### IV.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim

upon which relief may be granted.  The Clerk is directed to terminate each of the defendants and close this case; and it is further

**ORDERED** that plaintiff's Motion for Class Certification and Counsel (Dkt. No. 10) is **DENIED as moot**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

July 27, 2021
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge